## Richmond.

### PATTERSON v. CRAWFORD AND OTHERS.

#### NOVEMBER 23, 1899.

1. JUDICIAL SALES—*Misappropriation of Funds—Who to Bear Loss—Priorities Among Creditors.*—As between debtor, creditor, and purchaser in a judicial proceeding to subject land to the payment of liens thereon, the loss resulting from the defalcation of a receiver of the court must fall on the creditor; and, as between different classes of creditors, it must be borne in the inverse order of their respective priorities.

2. JUDICIAL SALES—*Misappropriation of Funds—Priorities Among Creditors—Who to Bear Loss.*—If, in a suit to subject a debtor's lands to the payment of the liens thereon, the proceeds of the sale of a part of the land be lost in consequence of the defalcation of the receiver of the court, the proceeds of the residue of the lands will be appropriated to the senior creditors in preference to the junior, in the absence of fault on the part of the senior creditors, although the lost fund was sufficient to pay the senior creditors, and the junior creditors were the purchasers of the residue of the land, and it was the purpose of the court to credit their purchase on their debt if the money realized from the other lands was sufficient to pay the senior creditors. No part of the fund could be appropriated to the payment of the junior creditors until the senior creditors had been paid in full.

Appeal from a decree of the Circuit Court of Augusta county.

*Reversed.*

The opinion states the case.

*J. M. Quarles, T. C. Elder,* and *A. F. Robertson,* for the appellant.

*A. C. Braxton,* for the appellee.

RIELY, J., delivered the opinion of the court.

W. E. Craig, who was appointed a special commissioner to collect and disburse the proceeds of sale of certain of the parcels of land sold under decrees entered in this cause, defaulted in the sum of $3,245.45. He is dead, and his estate and the sureties on his official bond are wholly insolvent. The single question to be decided is: Upon whom must the loss resulting from the defalcation fall?

It is plain that the debtor is absolved from making good the loss, even if he has the means of doing so. His lands were sold, and the proceeds of sale of certain parcels thereof collected by the commissioner sufficient to pay the creditors, who, by virtue of their liens, were entitled thereto. He has been deprived of his property for the express purpose of paying his creditors. The proceeds of sale were received by the representative of the court, and lost without the fault of the debtor. His estate having once borne the burden, it cannot be made to do so again. He cannot be made to pay his debts twice. 2 Spences Eq. Jur., mar. p. 344; *Rigge* v. *Bowater*, 3 Bro. Ch. Cas. 365; *Omerod* v. *Hardman*, 5 Vesey, 736; and *Walker* v. *Commonwealth*, 18 Gratt. 45-47.

Nor can the loss be thrown upon the purchasers whose money was misappropriated. They paid it as required by the court and to the person appointed by the court to collect it.

It follows, therefore, that the loss must be borne by the creditors. Inasmuch, however, as the debtor, in conveying his real and personal estate by deed of trust for the payment of his debts, created preferences among his creditors, arranging them in several classes, the manner in which the loss must be borne or upon which class of creditors it must fall is a vital question, and one of much practical importance.

Where property is subjected to the payment of liens thereon, the liens are transferred from the property to the proceeds of sale, and in the administration thereof the respective priorities are duly

preserved. The cost of converting the property into money for
the payment of the liens, and the expense of administering the
fund, must be borne by the lienors in the inverse order of the
priorities of their respective liens, if the fund be not sufficient
to pay such cost and expense as well as all the liens. This results
necessarily from the priority of one lien over another. And so,
for the same reason, if the proceeds of sale of the property, or of
any part thereof, fail, from any cause, to be realized, or, after it
has been collected by the officer or representative of the court,
is subsequently misappropriated by him or otherwise lost, the
loss must be borne by the fund, and the lienors suffer to that
extent in the order above stated. This is well understood to be
the general rule.

It was, however, earnestly argued that in the case at bar the
court had manifested in its decrees its purpose not to collect
the purchase money for parcels Nos. 2 and 4 of the land, but to
allow Mrs. Crawford to discharge the same with her debts, if the
proceeds of sale of the other lands were sufficient to pay the debts
which were prior to hers, and had so appropriated thereto the said
proceeds as to make them, upon their receipt by the receiver,
the money of the prior creditors, and that, consequently, being
their money, the loss resulting from his default must be borne
by them. The Circuit Court so held.

It appears from the record that the lands of the debtor con-
sisted of his " Home " place in Augusta county, and his " Moun-
tain " tract in Albemarle county. The " Home " place, for the
purposes of the sale, was divided into four parcels, numbered 1,
2, 3, and 4. At the sale of the lands by commissioners of
the court, Virginia B. Crawford, the wife of the debtor, to whom
he had secured in the sixth class of his deed of trust, a debt for
$1,900, with interest from January 1, 1879, and in the seventh
class the sum of $5,000, in consideration of the relinquishment
of her contingent right of dower in his lands, became the pur-
chaser of parcels Nos. 2 and 4, and also of the " Mountain "

tract. The sales were confirmed by the court, but as Mrs. Craw-ford failed to comply with the terms of the sale as to parcels 2 and 4 of the " Home " place, a rule was awarded against her to show cause why they should not be resold at her risk and cost. Subsequently the court accepted an assignment to the commis-sioners of sale of her said debts in lieu of personal security on her bonds for the deferred payments of the purchase money for the said parcels of land.

An account of the liens upon the lands, with their respective priorities, was taken and confirmed by the court. By its decree of June 1, 1894, it ordered and decreed that W. E. Craig, the bonded commissioner in the cause, " withdraw and collect the bonds of all of the purchasers in this case as they severally ma-ture, or in advance of maturity, if the purchasers, or either of them, so desire, and disburse the proceeds thereof in payment of the unsatisfied costs of this suit and of any unpaid taxes on the land which the fund should pay, and in payment of the debts in the order of their priority, as recapitulated on pages 10 and 11 of the third report of Master Commissioner John M. Kinney. * * * *'' The decree also recites and orders, that " it fur-ther appearing to the court that the sale of other purchasers than Mrs. Virginia B. Crawford's, including the mountain land sold to Mrs. Virginia B. Crawford, is enough to pay all of the debts secured in the deed of trust ahead of Mrs. Virginia B. Crawford, therefore Commissioner Craig, the bonded commissioner in this case, will not proceed to enforce collection of any of Mrs. Vir-ginia B. Crawford's purchase money on the home place until it is ascertained in this case that the other real estate fund is not sufficient to pay the prior liens upon the fund before Mrs. Virginia B. Crawford's debts are paid."

By the same decree, a rule was awarded against Mrs. Craw-ford and the surety on her bonds for the deferred purchase money of the " Mountain " tract of land to show cause why the said

land should not be resold for default in the payment of the first of the said bonds.

The court, by its decree of December 4, 1894, ordered the commissioners of sale, unless Mrs. Crawford, within sixty days, paid the principal and interest of the said bond, and the costs of the rule, to resell the "Mountain" land, but provided that it should be their duty " to offer said tract of land in two or more parcels, and if they find that one parcel, or that a part of said land, will bring enough to pay off and discharge all the debts in this cause for which Mrs. Virginia B. Crawford and her surety, G. J. Holbrook, are liable, then it shall be their duty to make no further sale of said land in this cause. And this cause is referred to one of the master commissioners of this court, who shall make out a statement of the debts that Mrs. Virginia B. Crawford and her surety, G. J. Holbrook, are liable to pay, and deliver the same to said commissioners before the said land, or any part thereof, shall have been sold for their guidance." Master Commissioner John M. Kinney, in obedience to the latter part of the decree, made a statement for the guidance of the commissioners of sale of the amount necessary to be realized from the resale of the "Mountain" land, which, with the purchase money of parcels Nos. 1 and 3 of the "Home" place, would pay all the debts which had priority over those of Mrs. Crawford, so as to leave her purchase of parcels Nos. 2 and 4 intact, and ascertained this amount to be $2,447.35, with interest from May 10, 1894. This land, upon the resale, brought the sum of $3,001.05, which was more than enough, with the proceeds of sale of parcels Nos. 1 and 3, to discharge in full all the debts prior to those of Mrs. Crawford.

It is apparent, as claimed by counsel for Mrs. Crawford, that the court manifested an intention not to require her to pay up the purchase money for parcels Nos. 2 and 4, if the proceeds of sale of the other lands were sufficient to pay the creditors whose debts were ahead of hers. This was to save her inconvenience

and useless trouble. It would have been an unnecessary formality and a futile act to require her to pay for her purchases, and in the next breath order that the money be given back to her in payment of her debts. But if the money realized from the sale of the other lands was misappropriated by the receiver, and thereby lost to the preferred creditors, any purpose that the court might have theretofore had not to require payment from Mrs. Crawford, if the money realized from the sale of the other lands was sufficient to pay the preferred creditors, furnished no warrant to deprive them of the right to be paid out of the residue of the trust fund, and to throw upon them the loss resulting from the defalcation of the receiver. Their priority secured to them the right to be first paid, and the court was without power to deprive them of such right. It could not appropriate any part of the trust fund to the payment of a junior lienor until prior lienors were paid. Nor could it throw upon them a loss, which, without their fault, had befallen the fund. To do so would be to destroy their right of priority, which was beyond the power of the court. Their prior right was to be respected and enforced, and it could not be disregarded in favor of a junior creditor without their consent, or unless by their laches or misconduct they had lost the right to assert their priority or have it enforced. There is no proof that they were guilty of laches, nor that the defalcation of the receiver was in anywise attributable to them. The loss, by whomsoever it has to be borne, entails much hardship, but we are unable to see how, upon any principle, the court could so treat the trust fund as to make it just or proper that the loss should be borne by the preferred creditors, who were without fault, instead of by the deferred creditor.

The decree of the Circuit Court must be reversed, and the cause remanded for further proceedings, to be had in accordance with the views herein expressed.

*Reversed.*